UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

EQUAL EMPLOYMENT           )
OPPORTUNITY COMMISSION,    )
                          )
        Plaintiff,         )          CIVIL ACTION NO.
                          )
VS.                        )          3:15-CV-3104-G
                          )
METHODIST HOSPITALS OF DALLAS )
d/b/a METHODIST HEALTH SYSTEM, )
                          )
        Defendant.         )

**MEMORANDUM OPINION AND ORDER**

Before the court is the defendant's motion for summary judgment (docket

entry 27).  For the reasons discussed below, the motion is granted.

I.  BACKGROUND

A.  Procedural Background

The plaintiff, the Equal Employment Opportunity Commission ("the EEOC"),

commenced this action on September 24, 2015, against the defendant, Methodist

Hospitals of Dallas ("Methodist").  The EEOC's Complaint Against Methodist

Health System and Methodist Charlton Medical Center (docket entry 1).  On

October 16, 2015, the EEOC amended its complaint.  EEOC's Amended Complaint with Jury Demand ("Amended Complaint") (docket entry 11).

In its amended complaint, the EEOC contends that former Methodist employee Adrianna Cook ("Cook") filed a charge with the EEOC alleging that Methodist violated Title I of the Americans with Disabilities Act ("ADA").  Amended Complaint ¶ 7; Methodist's Appendix in Support of Its Motion for Summary Judgment ("Methodist App.") at 12 (docket entry 29).  The EEOC subsequently determined that Methodist violated the ADA.  Amended Complaint ¶ 8; Methodist App. at 12.  The EEOC then commenced this action after Methodist failed to informally remedy its purported discriminatory practices.  Amended Complaint ¶¶ 8-12; Methodist App. at 12.

On July 29, 2016, Methodist filed this motion for summary judgment. Methodist's Motion for Summary Judgment (docket entry 27).  The motion is now ripe for decision.

## B.  Factual Background

Methodist hired Cook as a patient care technician ("PCT") in December 2008.[1]  *See* The EEOC's Appendix in Support of Its Response to Methodist's Motion for Summary Judgment ("EEOC App.") at 4 (docket entry 32).  On March 7, 2012,

---

[1]      A PCT checks medical readings, assists with general patient comfort, and turns, feeds, and bathes the patients.  *See* Methodist App. at 74, 78.

Cook injured her back while working as a PCT.  EEOC App. at 109; Methodist App. at 42.  She was diagnosed with an annular tear and degenerative disk condition. Amended Complaint ¶ 13; Methodist App. at 12.

For the month following her injury, Cook obtained various medical restrictions -- some restricting work entirely and some permitting light work.  *See* Methodist App. at 58-63.  To accommodate Cook's "light duty" restrictions, Methodist placed Cook in the pharmacy.  Methodist App. at 44; EEOC App. at 110.  Finally, on April 13, 2012, Cook's doctor released her to return as a PCT.  Methodist App. at 64-65. After working only 4.5 hours, April 14, 2012, was Cook's last day as a PCT.  *Id.* at 29-30.

Cook approached her supervisor, Cherie James ("James"), in April 2012 requesting reassignment to accommodate her back injury.  EEOC App. at 115-118, 190-195.  The EEOC contends that Methodist's sole accommodation was directing Cook to the jobs database.  *See* The EEOC's Brief in Response to Methodist's Motion for Summary Judgment ("Response") at 4 (docket entry 31); EEOC App. at 1, 145-146.  Methodist maintains that it accommodated Cook by placing her on light duty in March and April of 2012.  Methodist's Brief in Support of Its Motion for Summary Judgement ("Motion") at 3 (docket entry 28); Methodist App. at 56. Moreover, Cook was put on leave under the Family and Medical Leave Act ("FMLA") from April to July 2012.  *See* Motion at 3; Methodist App. at 88-92.

Cook applied for eight jobs, including the scheduling coordinator position, between March 29 and July 2, 2012.[2]  *See* EEOC App. at 1-2; Methodist App. at 13. Cook testified that she did not need any accommodation to be a scheduling coordinator.  EEOC App. at 2.  However, as of July 2, 2012, Cook had not provided Methodist with a release stating that she could return to work.  Motion at 10.  Thus, Cook was not appointed to the position.  Response at 5; EEOC App. at 2, 9.

Methodist contends that it continued to accommodate Cook by offering her, in an August 7, 2012 letter, an additional six months of unpaid personal leave of absence if she was still unable to work.  Methodist App. at 93; EEOC App. at 15. The letter also urged Cook to contact Methodist's Human Resources officer Josie Hernandez to discuss her employment.  Methodist App. at 93; EEOC App. at 15. Cook did not respond to the letter nor contact Hernandez.  Methodist App. at 85-86.

When Cook failed to reply, Methodist terminated her employment on September 17, 2012.  EEOC App. at 51; Methodist App. at 106.  Cook appealed the decision on September 20, 2012.  Methodist App. at 33.  Methodist then gave Cook until October 22, 2012 to apply for personal leave.  *Id.*  However, Cook again failed

---

[2]    The scheduling coordinator coordinates surgeries for multiple operating rooms at the hospital for approximately 120 physicians.  Methodist App. at 116, 119.  This includes ensuring that the surgery is timely and that the correct surgical equipment is in each room.  *Id.* at 117.  It is critical that the scheduling coordinator appear for work.  *Id.*

to respond in any fashion.  *Id.* at 85-86.  As a result, Cook remained administratively

terminated, effective as of August 21, 2012.  See *id.*

The EEOC contends that Methodist failed to reasonably accommodate Cook

by refusing to reassign her to the scheduling coordinator position in violation of Title

I ADA.  *See* Amended Complaint ¶¶ 15-23; Methodist App. at 13-14.

## II.  ANALYSIS

### A.  Summary Judgment Standard

Summary judgment is proper when the pleadings, depositions, admissions,

disclosure materials on file, and affidavits, if any, "show[ ] that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of

law."  FED. R. CIV. P. 56(a), (c)(1).  A fact is material if the governing substantive law

identifies it as having the potential to affect the outcome of the suit.  *Anderson v.*

*Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  An issue as to a material fact is

genuine "if the evidence is such that a reasonable jury could return a verdict for the

nonmoving party."  *Id.*; see also *Bazan ex rel. Bazan v. Hidalgo County*, 246 F.3d 481,

489 (5th Cir. 2001) ("An issue is '*genuine*' if it is real and substantial, as opposed to

merely formal, pretended, or a sham.").  To demonstrate a genuine issue as to the

material facts, the nonmoving party "must do more than simply show that there is

some metaphysical doubt as to the material facts."  *Matsushita Electric Industrial*

*Company v. Zenith Radio Corporation*, 475 U.S. 574, 586 (1986).  The nonmoving

- 5 -

party must show that the evidence is sufficient to support the resolution of the

material factual issues in his favor. *Anderson*, 477 U.S. at 249 (citing *First National*

*Bank of Arizona v. Cities Service Company*, 391 U.S. 253, 288-89 (1968)).

When evaluating a motion for summary judgment, the court views the

evidence in the light most favorable to the nonmoving party. *Id.* at 255 (citing

*Adickes v. S.H. Kress & Company*, 398 U.S. 144, 158-59 (1970)). However, it is not

incumbent upon the court to comb the record in search of evidence that creates a

genuine issue as to a material fact. See *Malacara v. Garber*, 353 F.3d 393, 405 (5th

Cir. 2003). The nonmoving party has a duty to designate the evidence in the record

that establishes the existence of genuine issues as to the material facts. *Celotex*

*Corporation v. Catrett*, 477 U.S. 317, 324 (1986). "When evidence exists in the

summary judgment record but the nonmovant fails even to refer to it in the response

to the motion for summary judgment, that evidence is not properly before the district

court." *Malacara*, 353 F.3d at 405.

## B. Evidentiary Objections

Before considering the merits of Methodist's motion for summary judgment,

the court must address Methodist's objections to evidence cited in the EEOC's

summary judgment response. The court will consider only the evidentiary objections

specifically raised by Methodist. See *Eguia v. Tompkins*, 756 F.2d 1130, 1136 (5th

Cir. 1985) ("Documents presented in support of a motion for summary judgment

may be considered even though they do not comply with the requirements of Rule 56 if there is no objection to their use.").

### 1. *Affidavit of Adrianna Cook*

Methodist raises nine objections to various statements in Cook's affidavit. Methodist's Reply to the EEOC's Response to Its Motion for Summary Judgment ("Reply") at 1-4 (docket entry 33).  However, "because the court did not find it necessary to rely on this evidence in support of its decision, these objections are overruled as moot." *Detgen ex rel. Detgen v. Janek*, 945 F. Supp. 2d 746, 753 (N.D. Tex. 2013) (Fish, J.), *aff'd*, 752 F.3d 627 (5th Cir. 2014).

### 2. *Social Security Administration Letter to Adrianna Cook*

Methodist objects to a letter from the social security administration.  *See* EEOC App. at 43-46.  Methodist contends that the letter has not been authenticated, is hearsay, and is not relevant.  Reply at 4.  The court sustains Methodist's objection. *See* FED. R. EVID. 902.

### 3. *EEOC Enforcement Guidelines*

Methodist's objection to the EEOC's enforcement guidelines is overruled. Courts are permitted to give deference to the EEOC's guidelines.  See *Griggs v. Duke Power Company*, 401 U.S. 424, 433-34 (1971) (stating that the EEOC's guidelines are "entitled to great deference"); *Batterton v. Francis*, 432 U.S. 416, 425 n.9 (1977) ("[A]

court is not required to give effect to an interpretive regulation.  Varying degrees of

deference are accorded to administrative interpretations. . . .").

### 4.  *Change and Signature Pages*

Methodist contends that the EEOC failed to provide change and signature

pages for various depositions and should be excluded under FED. R. CIV. PROC.

32(a)(6).  However, again, the court did not rely on these changes and overrules

Methodist's objection as moot.  See *Detgen ex rel. Detgen*, 945 F. Supp.2d at 753.

### C.  ADA Standards

The EEOC has three specific ADA claims:  (1) Methodist failed to reasonably

accommodate Cook; (2) Methodist terminated Cook because of her disability; and

(3) Methodist maintains a policy of denying reassignment as a reasonable

accommodation by requiring qualified individuals with disabilities to compete for

open positions for which they are qualified.  *See* Amended Complaint ¶¶ 15-23;

Methodist App. at 13-14.

The ADA provides that "[n]o covered entity shall discriminate against a

qualified individual on the basis of disability. . . ."  42 U.S.C. § 12112(a).  To prevail

on its ADA claim, the EEOC must prove that:  (1) Cook has a disability;[3] (2) Cook

was qualified for her job; (3) an adverse employment decision was made solely

---

[3]        For purposes of deciding this motion, the court will assume that Cook
suffered from a "disability" under the ADA.  *See* Motion at 6.

because of Cook's disability; and (4) Cook was replaced or treated less favorably than non-disabled employees. *Turco v. Hoechst Celanese Corporation*, 101 F.3d 1090, 1092 (5th Cir. 1996); *Rizzo v. Children's World Learning Centers, Inc.*, 84 F.3d 758, 763 (5th Cir. 1996); *Burton v. Freescale Semiconductor, Incorporated*, 798 F.3d 222, 230 (5th Cir. 2015) (quoting *Equal Opportunity Employment Commission v. Chevron Phillips Chemical Co., LP*, 570 F.3d 606, 615 (5th Cir. 2009)).   "Discrimination" under the ADA includes "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual. . . ."  42 U.S.C. § 12112(b)(5)(A).

### D.  Application

#### 1.  *Whether Cook Is Qualified under the ADA*

To prevail in this lawsuit, the EEOC must prove that Cook is a "qualified individual" under the ADA.  *See* 42 U.S.C. § 12112(a), (b)(5)(A).  The ADA defines a qualified individual as "an individual [with a disability] who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds *or desires*."  *See* 42 U.S.C. § 12111(8) (emphasis added).  When the employee requests reassignment as a reasonable accommodation, courts look to the job that the employee seeks when determining whether he or she is a qualified individual.  See *Holtzclaw v. DSC Communications Corporation*, 255 F.3d 254, 260 (5th Cir. 2001) ("Because, in regard to other types of discrimination claims, including other ADEA claims, we consistently have required that a plaintiff be

qualified for the job he seeks."); *Daugherty v. City of El Paso*, 56 F.3d 695, 698-99 (5th Cir. 1995), *cert. denied*, 516 U.S. 1172 (1996).  Thus, because Cook's claims arise out of Methodist's failure to reassign Cook to the job of scheduling coordinator, the court will determine whether she is otherwise qualified for that position.[4]  *See* Amended Complaint ¶¶ 15-18; Methodist App. at 13-14.

To determine whether a plaintiff is "otherwise qualified" for a given job, the court must first determine whether the employee satisfied the necessary prerequisites for the job, such as education, experience, skills, and the like.  *Foreman v. Babcock & Wilcox Company*, 117 F.3d 800, 810 (5th Cir. 1997), *cert. denied*, 522 U.S. 1115 (1998); *see also* 29 C.F.R. § 1630.2(m).

Here, the EEOC contends that Cook is qualified because she could assess potential scheduling problems, perform basic math calculations, type over thirty words per minute, and utilize excellent communication skills.  *See* Response at 10-11. Moreover, the EEOC contends, Methodist's human resources department determined that Cook met the job requirements when it forwarded her application to the scheduling coordinator hiring manager.  Response at 11.

---

[4]    The EEOC does not contend that Cook was otherwise qualified for the PCT position.  *See generally* Response.  Moreover, other than the scheduling coordinator, the seven other positions that Cook applied for had similar requirements to the PCT position.  *See* Motion at 13; Methodist App. at 110-112.  Thus, it appears to be undisputed that Cook was not otherwise qualified for these other seven positions.

However, meeting minimum necessary prerequisites is not dispositive in determining whether Cook is otherwise qualified under the ADA.  See *Colon-Fontanez v. Municipality of San Juan*, 671 F. Supp. 2d 300, 327 (D.P.R. 2009) (holding the otherwise qualified requirement is more encompassing than meeting the minimum job qualifications), *aff'd*, 660 F.3d 17 (1st Cir. 2011).

The second step in determining whether Cook is otherwise qualified is further broken down into a two-part inquiry:  (1) the court must determine whether Cook could perform the essential functions of her job, "*i.e.*, functions that bear more than a marginal relationship to the job at issue," and (2) if the court finds that Cook is not able to perform the essential functions of her job, it must determine whether any reasonable accommodation by the employer would enable her to perform those functions.  *Chandler v. City of Dallas*, 2 F.3d 1385, 1393-94 (5th Cir. 1993) (citing *Chiari v. City of League City*, 920 F.2d 311, 315 (5th Cir. 1991)), *cert. denied*, 511 U.S. 1011 (1994).[5]  When a disabled employee seeks reassignment and applies for a new position, courts look to whether the employee is otherwise qualified *at the time* of

------

[5]      Although *Chandler* involved claims under the Rehabilitation Act of 1973 ("the Rehabilitation Act"), 29 U.S.C. § 701 *et seq.*, the Fifth Circuit has consistently held that case law interpreting the Rehabilitation Act is considered persuasive authority for interpreting the ADA because of the similarity between the statutes. See *Chandler*, 2 F.3d at 1391 & n.18; see also *Taylor v. Principal Financial Group, Inc.*, 93 F.3d 155, 162 (5th Cir.) ("'Unless expressly stated otherwise, the standards applied in the ADA are not intended to be lesser than the standards applied under [the Rehabilitation Act]'") (citation omitted), *cert. denied*, 519 U.S. 1029 (1996); *Dutcher v. Ingalls Shipbuilding*, 53 F.3d 723, 727 n.14 (5th Cir. 1995).

application.  See *Bergeron v. City of Baton Rouge*, 31 Fed. App'x 158, 2001 WL 1751407, at *1-2 (5th Cir. 2001) (holding that the plaintiff was not "otherwise qualified" at the time of his application); *Halpern v. Wake Forest University Health Sciences*, 669 F.3d 454, 466 (4th Cir. 2012) (looking to whether the plaintiff was "otherwise qualified" at the time of the proposed accommodation).

The EEOC contends that when "Cook applied for the Scheduling Coordinator job, she was well able to perform this clerical job without any accommodation, and Defendant knew it."  Response at 12.  Moreover, the EEOC argues, Methodist was "aware that, at the time [Cook] applied for the Scheduling Coordinator Job, she had a 20-pound lifting restriction and a medical recommendation to refrain from bending, stooping and twisting."  *Id.*

Methodist insists that "Cook was at no time released to return to work, even on light duty."  *See* Reply at 8.  Without a release, Methodist avers, Cook could not appear for work.  Motion at 14.  Moreover, Methodist contends that Cook was on FMLA leave from April 23, 2012 to July 15, 2012 -- further precluding her from working.  *Id.*; Methodist App. at 32.  Methodist concludes that because Cook could not come to work, she could not perform the essential functions of scheduling coordinator at the time she applied and therefore she was not a qualified individual under the ADA.  *See* Motion at 13-15.

An essential function for nearly every job is the ability to appear for work. *Rogers v. International Marine Terminals, Inc.*, 87 F.3d 755, 759 (5th Cir. 1996) (holding that "[b]ecause [the plaintiff] could not attend work, he is not a 'qualified individual with a disability' under the ADA") (citing *Carr v. Reno*, 23 F.3d 525, 529-30 (D.C. Cir. 1994) (holding that "coming to work regularly" is an "essential function"), and *Tyndall v. National Education Centers, Incorporated of California*, 31 F.3d 209, 213 (4th Cir. 1994) (holding that regular attendance is "essential function")); *Grubb v. Southwest Airlines*, 296 Fed. App'x 383, 388 (5th Cir. 2008) ("Lack of physical presence is a commonly-accepted disqualification for ADA protection."), *cert. denied*, 556 U.S. 1182 (2009).

If an employee is placed off work due to a medical condition, the employee may need to provide a release informing the employer when they can return to work. See, *e.g.*, *Crow v. McElroy Coal Company*, 290 F. Supp. 2d 693, 696 (N.D. W. Va.), *aff'd*, 77 Fed. App'x 649 (4th Cir. 2003) ("Because Crow failed to obtain a release to work from his doctor, Crow has not shown that he can perform the essential functions of the job with or without reasonable accommodation.").  Courts have regularly held that an employee who fails to provide a release is not a qualified individual under the ADA.  See, *e.g.*, *Rogers*, 87 F.3d at 759 (holding that a disabled employee was not a qualified individual when he had not yet been released by his physician to return to work); *Crews v. Dow Chemical Company*, 287 Fed. App'x. 410,

412 (5th Cir. 2008) (holding that discharged employee was not a qualified individual when the employee's physician stated that she could not return to work); *Gantt v. Wilson Sporting Goods Company*, 143 F.3d 1042, 1047 (6th Cir. 1998) ("[B]ecause she was not released by her doctor to return to work, she has not met the second requirement that she be qualified to perform the essential functions of the job.").

Applying the above authorities, the court will now examine whether the EEOC has pointed to any evidence showing that Cook could attend work on July 2, 2012 -- the date that she applied for the scheduling coordinator position.[6]  For the proposition that Cook could return to work, the EEOC first points to a June 29, 2012 "History and Physical Report #1" written by Cook's doctor, Dr. Stephen Ozanne.  *See* Response at 2, 12; EEOC App. at 5-6.  This report states, "from a work viewpoint, she is unable to return to her work in patient care in the hospital.  She may need to consider schooling or training for a different type of work."  EEOC App. at 6.

However, the report cannot serve as a release because the EEOC has produced no evidence[7] that this report, or its contents, was transmitted to Methodist.  *See*

---

[6]      It is undisputed that Cook was placed "off work" as of April 23, 2012. Methodist App. at 66-72.  "Off work" precluded Cook from coming to work.  *See id.*; Motion at 9.  Thus, the court will determine whether there is evidence raising a genuine dispute that Cook was otherwise qualified before applying for the scheduling coordinator position.

[7]      The evidence that EEOC cites, EEOC App. at 1, 110, 166-171, 196,
                                                                  (continued...)

- 14 -

Methodist App. at 56; see also *Reed v. LePage Bakeries, Inc.*, 244 F.3d 254, 261 (1st Cir. 2001) ("The employer has no duty to divine the need for a special accommodation where the employee merely makes a mundane request for a change at the workplace.").  It is clear that before July 2, 2012, the last two communications to Methodist concerning Cook's fitness to work stated that she was "off work."  *See* Methodist App. at 66-72.

The EEOC also points to a July 12, 2012 note from Dr. Ozanne stating that "[Cook] is unable physically to return to the type of work involved in patient care at the hospital."  EEOC App. at 98.  However, Cook applied for the scheduling coordinator 10 days prior to this note.  *See* Methodist App. at 32.  Similarly, the EEOC also refers to July 9, 2012 email from Lincoln Financial Group identifying her workplace restrictions.  Response at 18; EEOC App. at 13.  However, the note from Lincoln Financial Group is not a medical release nor does it relate to modifying Cook's "off work" status.  *See* EEOC App. at 13.  Rather, it is an email inquiring about potential accommodations should Cook be released to return to work.  See *id.* Moreover, Methodist received it *after* Cook applied for the scheduling coordinator position.  *See* Methodist App. at 32.  Thus, these documents cannot serve as evidence that Cook was otherwise qualified.

---

[7](...continued)
fails to raise a dispute about whether Methodist knew of Cook's restrictions.  *See* Response at 2, 12.

The EEOC counters that Methodist's policy requiring a release amounts to a "100% healed" policy -- a per se violation of the ADA.  Response at 11-12.  It is true that a policy requiring 100% recovery may violate the ADA.  See *Henderson v. Ardco, Inc.*, 247 F.3d 645, 653-54 (6th Cir. 2001); *Barton v. Checkers Drive-In Restaurants, Inc.*, No. CIV.A. 11-186, 2011 WL 1193061, at *3 (E.D. La. Mar. 28, 2011).  However, the EEOC has submitted no evidence that Methodist required a full release.  *See* Response at 11-12.  Moreover, Methodist's accommodation of Cook's light duty restrictions undermines this argument -- Methodist accommodated Cook without a "full release."  *See* Reply at 10; Methodist App. at 44, 56; EEOC App. at 110; cf. *Barton*, 2011 WL 1193061, at *3 (holding that the defendant's policy of requiring the employee to return to work with no restrictions violates the ADA).

The EEOC's last piece of evidence is Cook's affidavit stating that she was qualified for the position.  *See* EEOC App. at 2.  However, a conclusory statement about an individual's qualification is insufficient for summary judgment purposes. *Cannizzaro v. Neiman Marcus, Inc.*, 979 F. Supp. 465, 476 (N.D. Tex. 1997) (Solis, J.) ("Cannizzaro has not established, position by position, that she was qualified to perform each job's essential functions.  Instead, she offers conclusory statements regarding her qualification.") (internal citations omitted); *Alexander v. Northland Inn*, 321 F.3d 723, 727 (8th Cir. 2003) ("[T]he employee's belief or opinion that she can do the function is simply irrelevant.  The ADA does not require an employer to

permit an employee to perform a job function that the employee's physician has forbidden."); *Taylor v. AutoAlliance International, Inc.*, No. 08-CV-11318, 2009 WL 2591533, at *7 (E.D. Mich. Aug. 24, 2009) ("In sum, Plaintiff's personal belief is insufficient to create a question of material fact when severely undermined by her own previous statements, medical documentation, and work place restrictions.").

Additionally, Cook was on FMLA leave at the time she applied for the scheduling coordinator position. *See* Methodist App. at 92. Because Cook gave no indication when she would return from FMLA leave, Methodist was in the dark as to Cook's future plans. See *Payne v. Fairfax County*, No. 1:05-CV-1446 (JCC), 2006 WL 3196545, at *9 (E.D. Va. Nov. 1, 2006) ("[I]f an employee cannot perform the essential function of attendance, even if due to FMLA leave, then the employee is still not a "qualified individual" within the meaning of the ADA. To rule otherwise would be a judicial expansion of a Plaintiff's rights under the ADA and run directly contrary to § 825.702."); *Praigrod v. St. Mary's Medical Center*, No. 3:05-CV-0166 JDT-WGH, 2007 WL 178627, at *6 (S.D. Ind. Jan. 19, 2007) (same). Methodist was permitted to search for a candidate to fill the scheduling coordinator position. It was not required to wait indefinitely to determine whether Cook was qualified. See *Silva v. City of Hidalgo, Texas*, 575 Fed. App'x 419, 423-24 (5th Cir. 2014) ("Reasonable accommodation does not require an employer to wait indefinitely for the employee's medical conditions to be corrected." (quoting *Rogers*, 87 F.3d at 760)).

Without a release or any communication from Cook, the EEOC has provided

no evidence showing that Methodist was aware that Cook could return to work in

any capacity.  *See* Reply at 12; see also *Anderson v. Inland Paperboard & Packaging*, 11

Fed. App'x. 432, 438 (6th Cir. 2001) ("The second element of a prima facie case

under the ADA is the requirement that a plaintiff be able to perform the essential

functions of her job . . . . [Plaintiff]'s doctor, however, had not yet given her

permission to return to work when her employment with [her employer] was

terminated in February of 1998.  Accordingly, she was unable to perform her duties

as a storeroom clerk."); *Kitchen v. Summers Continuous Care Center, LLC*, 552 F. Supp.

2d 589, 594 (S.D. W. Va. 2008); *Holtzclaw*, 255 F.3d at 259-60 (requiring a

legitimate doctor's release to return to work before a disabled employee could be a

qualified individual); *Smith v. Midland Brake, Inc.*, 180 F.3d 1154, 1173-74 (10th Cir.

1999) (noting that an employer may demand a release prior to reassigning an

employee).  All of the prior contacts between Cook's physicians and Methodist show

that Cook was placed "off work."  Thus, Cook was not a qualified individual under

the ADA and the EEOC's ADA claims against Methodist fail.[8]

_____

[8]     Moreover, Cook further lost her status as a qualified individual when
the interactive process broke down after Cook did not respond, in any fashion, to
Methodist's August 7, 2012 letter.  It is well settled that when the employee fails to
engage in the interactive process, she loses her right to a reasonable accommodation.
See *Toronka v. Continental Airlines, Inc.*, 411 Fed. App'x 719, 726 (5th Cir. 2011)
("[A]n employer is not, however, liable if the breakdown in the interactive process is
(continued...)

2.  *Methodist's Reassignment Policy*

a.  Reassignment as a Reasonable Accommodation

The court must first determine whether reassignment is an appropriate

reasonable accommodation in this case.  As previously discussed, reasonable

accommodation under the ADA includes "reassignment to a vacant position."  42

U.S.C. § 12111(9)(B); 29 C.F.R. § 1630.2(o)(2)(ii).  Furthermore, Congress

contemplated reassignment as a reasonable accommodation while drafting the ADA.

*See* H.R. Rep. No. 485(II), at 63, 101st Cong., 2d Sess. 63 (1990), reprinted at 1990

U.S.C.C.A.N. 303, 345 ("If an employee, because of disability, can no longer perform

the essential functions of the job that she or he has held, a transfer to another vacant

job for which the person is qualified may prevent the employee from being out of

work and [the] employer from losing a valuable worker.").  Courts have frequently

held that reassignment is appropriate when an employee cannot perform her current

position with or without reasonable accommodation.  See, *e.g.*, *Toronka*, 411 Fed.

App'x at 724 ("An employer may be required to reassign a disabled employee to a

vacant position, but only if that is reasonable."); *Smith,* 180 F.3d at 1162; *Cravens v.*

*Blue Cross & Blue Shield of Kansas City*, 214 F.3d 1011, 1018 (8th Cir. 2000).

---

[8](...continued)
traceable to the employee."); *Loulseged v. Akzo Nobel Inc.*, 178 F.3d 731, 736 (5th Cir.
1999).

Furthermore, as discussed above, the EEOC's guidelines offer courts guidance on applying the ADA.  The EEOC cites its own guidelines in its response:

> Before considering reassignment as a reasonable accommodation, employers should first consider those accommodations that would enable an employee to remain in his/her current position.  *Reassignment is the reasonable accommodation of last resort*, and is required only after it has been determined that:  (1) there are no effective accommodations that will enable the employee to perform the essential functions of his/her current position, or (2) all other reasonable accommodations would impose an undue hardship.

Response at 10 (emphasis added); EEOC App. at 69.  Without first considering the above criteria, the EEOC concludes, "there is no dispute that Cook applied for reassignment to the job of Scheduling Coordinator . . . as an accommodation after severely injuring her back . . ."  Response at 10.

Here, the record is devoid of any evidence showing that Cook treated reassignment "as an accommodation of last resort."  *See* EEOC App. at 69.  A close examination of the record is instructive here.  Cook's doctors placed her on various restrictions from March 7, 2012 to July 12, 2012.  Methodist App. at 58-72, 123.  Cook's restrictions included light duty restrictions during the months of March and April.[9]

_____

[9]     Cook's light duty restrictions were accommodated by Methodist on March 22, 23, 26, 27, 28, 29, 30, April 2, 4, 5, 6, 9 and 10.  Cook worked in the pharmacy for these days until she was released to return to work full duty.

(continued...)

Cook's light duty restrictions placed her in the pharmacy.  Methodist App. at 44, 56.  Cook's duties in the pharmacy included filing syringes, putting labels on packages, standing, and sitting.  See *id.* at 44; EEOC App. at 110.  It is further undisputed that on April 23, 2012, Cook's doctor, Dr. Joseph Tejan, put her "off work."  Methodist App. at 66-72, 123.  Cook's "off work" status rendered her completely unable to work -- not light duty in the pharmacy or otherwise.  See *id.* at 43-45, 66; EEOC App. at 111-112.

On July 2, 2012, Cook applied for the scheduling coordinator position.  EEOC App. at 9; Methodist App. at 32.  The scheduling coordinator position entails creating reports, distributing schedules, participating in meetings, and educating interdepartmental staff.  *See* Methodist App. at 115-119.  Without determining whether she could perform light duty in the pharmacy, Cook sought to be reassigned to scheduling coordinator -- a position that has not been shown to be any less physically demanding than working in the pharmacy.  *Compare* Methodist App. at 115-119 *with* Methodist App. at 44-45.

If reassignment is truly the reasonable accommodation of last resort, Cook should have explored other accommodations before insisting on reassignment.  For example, Cook could have considered resuming light duty in the pharmacy or seeking

_____

[9](...continued)
Methodist App. at 56.

additional accommodations for the PCT.  In her deposition, Cook admits that she could have returned as a PCT with accommodations.  Methodist App. at 45.  Cook recommends accommodations such as assistance with tasks that require lifting and bending.  *Id.*  Cook suggests that she could perform other PCT tasks such as making beds, distributing ice, or "any of the other duties."  See *id.*

However, there is no evidence that Cook explored any other accommodations with Methodist prior applying for the scheduling coordinator position.  The failure to engage in such action hardly shows that Cook treated reassignment as "a reasonable accommodation of last resort."  See *Smith*, 180 F.3d at 1171 (stating that reassignment is the reasonable accommodation of last resort).  Rather, it appears that reassignment was the first accommodation that Cook sought.

b.  Methodist's Policy as Applied to Cook

The EEOC contends that Methodist's reassignment policy violates the ADA.  Amended Complaint ¶ 20; Response at 24.  The EEOC contends that "reassignment means appointment" and that it is unlawful for Methodist to require disabled employees to compete with non-disabled employees for a reassignment position.  Response at 26.  Specifically, the EEOC reasons:

> The instant case . . . squarely addresses a situation where an employee, who could not otherwise be accommodated, was required to compete for reassignment to a job which was available, and which she was qualified to perform.  Given, in particular, the Supreme Court's position that preferences are inherent in the duty to accommodate in

> specific instances such as this, the EEOC requests that this
> Court deny Defendant's request to dismiss the EEOC's
> claim that Defendant's reassignment policy violates the
> Americans with Disabilities Act.

*Id.* at 30.

Even if the EEOC could show that reassignment was appropriate in this case, the court has already concluded that Cook was not otherwise qualified for the scheduling coordinator -- or any other -- position.  Therefore, it is unnecessary to decide whether Methodist's reassignment policy, as applied to Cook, violates the ADA.

## III.  CONCLUSION

After careful consideration of the briefs and record in this case, the court concludes that Methodist has demonstrated that no genuine issues of material fact exist as to the EEOC's claims under the ADA.  Even when the evidence is viewed in a light most favorable to it, the EEOC has failed to direct the court's attention to evidence in the record sufficient to establish that a material issue of fact exists regarding any of these claims.  Because the EEOC will bear the burden of proving these claims at trial, this lack of evidence is fatal.  See *Celotex*, 477 U.S. at 322-23. Accordingly, Methodist's motion for summary judgment is **GRANTED**.

**SO ORDERED**.

November 4, 2016.

_A. Joe Fish_

A. JOE FISH
**Senior United States District Judge**